UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JONES TYLER MARTIN,

              Plaintiff,

-against-

KEITH MIHALIK, ALICIA WHINNERY, GERALD SACCO, JAMES PETRUCCI, and BRIAN BEST,

              Defendants.

**MEMORANDUM OPINION AND ORDER**

19-CV-7979 (PMH)

PHILIP M. HALPERN, United States District Judge:

Plaintiff Jones Tyler Martin ("Plaintiff"), who is proceeding *pro se* and *in forma pauperis*, initiated this action against Defendants James Petrucci ("Petrucci"), Brian Best ("Best"), Alicia Whinnery ("Whinnery"), Keith Mihalik ("Mihalik"), and Gerald Sacco ("Sacco," and collectively, "Defendants") on August 26, 2019. (*See* Doc. 2). Plaintiff brings claims under *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971) for: (1) discrimination based on sexuality in violation of the Fifth Amendment; and (2) deliberate indifference to serious medical needs in violation of the Eighth Amendment. Plaintiff seeks monetary and injunctive relief.

On January 29, 2019, Judge Román granted Plaintiff's motion to amend her Complaint.[1] (*See* Doc. 20). Plaintiff subsequently filed an Amended Complaint on February 13, 2020. (*See* Doc. 21, "Am. Compl."). This case was subsequently reassigned to this Court on April 3, 2020. On April 15, 2020, Defendants moved to dismiss Plaintiff's Amended Complaint under Federal Rule of Civil Procedure 12(b)(6). (*See* Doc. 33; Doc. 34, "Defs. Br."). Although Plaintiff's opposition brief was due no later than August 3, 2020 (*see* Doc. 37), Defendants filed a letter on

---

[1] Without reaching any conclusion as to Plaintiff's gender identity, the Amended Complaint suggests that Plaintiff is a transgender woman. Accordingly, the Court refers to Plaintiff herein using female pronouns.

August 10, 2020, noting that they had not yet received it. (*See* Doc. 44). Plaintiff belatedly filed her opposition to Defendants' motion on August 12, 2020 (*See* Doc. 46, "Pl. Opp.").[2] Through her opposition brief, Plaintiff also sought to move for appointment of *pro bono* counsel.[3] (*See id*. at 1-2). Defendants filed a letter reply on August 12, 2020. (*See* Doc. 47, "Defs. Reply").

For the following reasons, Defendants' motion to dismiss is GRANTED.

## BACKGROUND

The facts, as recited below, are taken from Plaintiff's Amended Complaint—which is not a model of clarity—and the exhibits annexed thereto.[4]

On or about April 11, 2019, while Plaintiff was incarcerated at the Federal Correctional Institute ("FCI") Otisville, Mihalik (Plaintiff's General Educational Development ("GED") instructor) used "vulger [sic] and offensive language" toward Plaintiff regarding "an incident involving a potted plant." (Am. Compl. at 5). Mihalik then demanded "in an aggressive manner" that Plaintiff go to his office. (*Id*.). After Plaintiff refused, Mihalik began "cussing" and making

---

[2] Citations to Plaintiff's opposition brief, as well as her Amended Complaint, correspond to the pagination generated by ECF.

[3] Plaintiff purportedly moved for appointment of *pro bono* counsel through her opposition brief. (*See* Pl. Opp. at 1-2). But a motion for appointment of *pro bono* counsel must be brought in a separate motion. *Cf. Keesh v. Quick*, No. 19-CV-08942, 2021 WL 639530, at *12 (S.D.N.Y. Feb. 17, 2021) (denying motion for Rule 11 sanctions made in opposition brief); *Corr. Officers Benevolent Ass'n of Rockland Cty. v. Kralik*, No. 04-CV-2199, 2011 WL 1236135, at *1 n.2 (S.D.N.Y. Mar. 30, 2011) (declining to consider a "cross-motion" where plaintiffs requested relief via an opposition motion, without filing a notice of motion). Accordingly, Plaintiff's motion for appointment of *pro bono* counsel is procedurally improper and is denied without prejudice to re-filing.

[4] *Halebian v. Berv*, 644 F.3d 122, 130 n.7 (2d Cir. 2011) ("[I]t is well established that on a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), the court may also rely upon 'documents attached to the complaint as exhibits[ ] and documents incorporated by reference in the complaint.'" (quoting *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010))).

derogatory statements about Plaintiff's sexuality. (*Id*.). Mihalik also informed Plaintiff at this time that she had been fired from her work assignment.[5] (*Id*.).

Later that same day, as Plaintiff was leaving the prison's education department, she noticed that Mihalik and Sacco were following her to her housing unit. (*Id*. at 5). Mihalik and Sacco proceeded to "tear[ ] . . . apart" Plaintiff's cell. (*Id*.). When Plaintiff tried to enter her cell, Mihalik told her to "get . . . out" because he was there to "search [her] cell." (*Id*.). Once the "search" ended, Plaintiff entered her cell and noticed that most of her personal property—including her underwear, letters, photos, food, hygiene products, and legal paperwork—had been destroyed. (*Id*. at 5-6). Most notably, Plaintiff's medication for her "severe seizures" was destroyed during the "search." (*Id*. at 6).

On April 17, 2019, Plaintiff submitted a BP-9 grievance form in connection with the search of her cell and destruction of her property. (*Id*.). A few days later, on April 24, 2019, Plaintiff spoke with Best about the BP-9 form she submitted. (*Id*.). Plaintiff states that she submitted the BP-9 form because she "simply wanted to . . . be reassigned back to the education dept in order to resolve [her] plight." (*Id*.). Plaintiff was told that she would "get [her] job back" if she withdrew the BP-9 form she had submitted. (*Id*. at 6-7). That same day, Plaintiff decided to withdraw her BP-9 form[6] and she was given her job back in the education department. (*See id*. at 7).

---

[5] Plaintiff's negative encounter with Mihalik on or about April 11, 2019 was not the first. (Am. Compl. at 7). Plaintiff alleges that Mihalik had previously "harass[ed] and disrespect[ed]" Plaintiff in her GED class, and on a number of occasions had asked other officers to "search" Plaintiff's cell to "[p]iss [her] off." (*Id*. at 7-8).

[6] Attached to the Amended Complaint is a signed copy of Plaintiff's Withdrawal of Request For Administrative Remedy dated April 24, 2019. (Am. Compl. at 12).

Three weeks later, Plaintiff appeared for a hearing before a Disciplinary Hearing Officer ("DHO").[7] (*Id.*). Plaintiff asked Jennifer Bowe, a psychologist, to accompany her to the hearing.[8] (*Id.*). At the hearing, Whinnery, the Education Supervisor, recommended that: (1) Plaintiff's incident report be dismissed; (2) Plaintiff be charged with insolence; and (3) Plaintiff "lose [her] job as a sanction." (*Id.*). Upon hearing this recommendation, it was Plaintiff's belief that Best, "as well as the entire [e]ducation dept wanted to take away [her] job assignment so that the dept. would not have to deal with [her] and they could sweep Officer Mihalik's actions under the rug as well." (*Id.*).

Thereafter, Plaintiff "re-submitted" her BP-9 form. (*Id.*). According to the notice attached to the Amended Complaint, Plaintiff's re-submitted BP-9 form was received on May 20, 2019 and rejected on May 22, 2019 because it was submitted to the wrong level. (*Id.* at 13). Plaintiff subsequently submitted at BP-10 form. (*Id.* at 7). The BP-10 form was received on June 7, 2019 and rejected on June 13, 2019, because: (1) Plaintiff failed to properly file a BP-9 form; and (2) Plaintiff's complaint was "related to an incident that resulted [in] sanctions," but was "not a DHO appeal." (*Id.* at 9).

## STANDARD OF REVIEW

On a Rule 12(b)(6) motion, a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the ple[d] factual

---

[7] The circumstances giving rise to this hearing are unclear from the face of the Amended Complaint.

[8] At the time, Bowe was treating Plaintiff for the "stress and anguish" that Plaintiff was experiencing due to Mihalik's alleged conduct. (*See* Am. Compl. at 7).

4

content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant acted unlawfully." *Id*. The factual allegations pled "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"When there are well-ple[d] factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. Thus, the court must "take all well-ple[d] factual allegations as true, and all reasonable inferences are drawn and viewed in a light most favorable to the plaintiff[]." *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996). The presumption of truth, however, "'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678 (alteration in original)). Therefore, a plaintiff must provide "more than labels and conclusions" to show entitlement to relief. *Twombly*, 550 U.S. at 555.

A complaint submitted by a *pro se* plaintiff, "however inartfully ple[d], must be held to less stringent standards than formal pleadings drafted by lawyers." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (quoting *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (internal quotation marks omitted)). Because *pro se* plaintiffs "'are often unfamiliar with the formalities of pleading requirements,' courts must apply a more flexible standard in determining the sufficiency of a *pro se* [complaint] than they would in reviewing a pleading submitted by counsel.'" *Smith v. U.S. Dep't of Just.*, 218 F. Supp. 2d 357 (W.D.N.Y. 2002) (quoting *Platsky v. Cent. Intelligence Agency*, 953 F.2d 26, 28 (2d Cir. 1991)). While "[p]ro se complaints are held to less stringent standards than those drafted by lawyers, even following *Twombly* and *Iqbal* . . . dismissal of a *pro se* complaint

5

is nevertheless appropriate where a plaintiff has clearly failed to meet minimum pleading requirements." *Thomas v. Westchester Cty.*, No. 12-CV-6718, 2013 WL 3357171, at *2 (S.D.N.Y. July 3, 2013) (internal citations omitted); *see also Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) ("Even in a *pro se* case . . . although a court must accept as true all of the allegations . . . in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." (internal quotation marks omitted)).

Therefore, while the Court must "draw the most favorable inferences that [a plaintiff's] complaint supports, [it] cannot invent factual allegations that [a plaintiff] has not pled." *Chappius*, 618 F.3d at 170. The Court also has a duty to interpret "the pleadings of a *pro se* plaintiff liberally and interpret them 'to raise the strongest arguments that they suggest.'" *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

**ANALYSIS**

I.  Prison Litigation Reform Act ("PLRA") Exhaustion

As a threshold matter, the PLRA provides that "[n]o action shall be brought with respect to prison conditions under [§] 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[I]nmates are not required to specially plead or demonstrate exhaustion in their complaints. However, a district court . . . may dismiss a complaint for failure to exhaust administrative remedies if it is clear on the face of the complaint that the plaintiff did not satisfy the PLRA exhaustion requirement." *Williams v. Priatno*, 829 F.3d 118, 122 (2d Cir. 2016) (internal quotation marks omitted).

6

"[T]o properly exhaust administrative remedies prisoners must 'complete the administrative review process in accordance with the applicable procedural rules,'—rules that are defined not by the PLRA, but by the prison grievance process itself." *Jones v. Bock*, 549 U.S. 199, 218 (2007) (internal citation omitted). When a prisoner is in a state-run prison, courts are required to "look at the state prison procedures and the prisoner's grievance to determine whether the prisoner has complied with those procedures." *Espinal v. Goord*, 558 F.3d 119, 124 (2d Cir. 2009). When a prisoner is in a federal prison, the grievance process employed by the Bureau of Prisons ("BOP") must be followed. *See Johnpoll v. Thornburgh*, 898 F.2d 849, 850 (2d Cir. 1990) ("The Bureau of Prisons has established administrative remedy procedures by which a federal inmate may seek formal review of a complaint which relates to any aspect of his imprisonment. . . . A federal prisoner . . . is not generally exempt from exhausting federal administrative remedies." (internal citations and quotation marks omitted)); *see also Johnson v. Rowley*, 569 F.3d 40, 45 (2d Cir. 2009) (holding that a federal inmate "had to comply with the BOP's . . . administrative grievance system for prisoner complaints").

Here, Plaintiff—"[a]n inmate in BOP custody"—was required to "exhaust a four-step administrative process," which *Gottesfeld v. Anderson* details:

> First, the inmate must present his or her complaint to a staff member on a BP-8 form. If the issue is not resolved, the inmate must then submit an Administrative Remedy Request—on a BP-9 form—to the Warden within 20 calendar days of the incident that triggered the complaint. Where the inmate is not satisfied with the Warden's response, the inmate must submit an appeal to BOP's Regional Director on a BP-10 form, and must do so within 20 calendar days of the Warden's response. Where the inmate is not satisfied with the Regional Director's response, the inmate must file a Central Office Administrative Remedy Appeal on a BP-11 form with the BOP's General Counsel, and must do so within 30 calendar days of the Regional Director's response.

7

No. 18-CV-10836, 2020 WL 1082590, at *6 (S.D.N.Y. Mar. 6, 2020). There are three circumstances, however, in which a BOP inmate's failure to exhaust this four-step process is excusable because relief is deemed "unavailable":

> First, an administrative remedy may be unavailable when 'it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates.' Second, 'an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use.' In other words, 'some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it.' Third, an administrative remedy may be unavailable 'when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.'

*Williams*, 829 F.3d at 123-24 (quoting *Ross v. Blake*, 136 S. Ct. 1850, 1860 (2016)).

Plaintiff alleges that she submitted BP-9 and BP-10 forms. (*See* Am. Compl. at 7). But Plaintiff does not allege, and provides no documentation to indicate, that she filed a BP-11 form. (Defs. Br. at 4). Therefore, it appears that Plaintiff did not exhaust the administrative process. Nonetheless, in her opposition to Defendants' motion to dismiss, Plaintiff asserts that she did in fact exhaust the administrative process.[9] Specifically, Plaintiff states that a prison official told her that "since [there was] no response" to her BP-10 form, she should proceed by submitting a BP-11 form.[10] (Pl. Opp. at 1). In light of Plaintiff's opposition brief, Defendants admirably concede[11] that Plaintiff, given the benefit of her *pro se* status, has sufficiently alleged that a "prison administrator[ ] thwart[ed] [her] from taking advantage of the grievance process through . . .

---

[9] "A district court deciding a motion to dismiss may consider factual allegations made by a *pro se* party in his papers opposing the motion." *Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013).

[10] Plaintiff also states that there was no response to her BP-11 form, and that to her knowledge, it was never received. (*See* Pl. Opp. at 1).

[11] *See* Defs. Reply at 2.

misrepresentation," i.e., the third prong of unavailability. *Williams*, 829 F.3d at 124. The Court agrees.

Because the administrative process may have been functionally "unavailable" to Plaintiff, her failure to exhaust is not "clear on the face of the complaint." *Id*. at 122. Accordingly, the motion to dismiss based on Plaintiff's failure to exhaust her administrative remedies is denied.

## II. *Bivens* Claims

Construing the Amended Complaint liberally, Plaintiff has asserted two *Bivens* claims: (1) discrimination based on sexuality in violation of Plaintiff's Fifth Amendment equal protection rights; and (2) "deliberate indifference to [Plaintiff's] serious medical needs" in violation of the Eighth Amendment. *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (quoting *Gamble*, 429 U.S. at 104).

In *Bivens*, "the Supreme Court 'recognized for the first time an implied private action for damages against federal officers alleged to have violated a citizen's constitutional rights.'" *Arar v. Ashcroft*, 585 F.3d 559, 571 (2d Cir. 2009) (quoting *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 66 (2001)). The "judicially-created" *Bivens* remedy is intended "to deter individual federal officers from committing constitutional violations" and permits a citizen to recover monetary damages directly from a federal official. *Id*. (quoting *Malesko*, 534 U.S. at 70). The Supreme Court has found that a *Bivens* remedy "is an extraordinary thing that should rarely if ever be applied in 'new contexts.'" *Id*. (citing *Malesko,* 534 U.S. at 69).

The Supreme Court has only recognized a *Bivens* remedy in three contexts. First, in *Bivens* itself, the Supreme Court permitted a plaintiff to recover monetary damages related to a Fourth Amendment violation. *Bivens*, 403 U.S. at 389-90. There, the plaintiff alleged he was "subjected to an unlawful, warrantless search which resulted in his arrest." *Arar*, 585 F.3d at 571 (citing

9

*Bivens*, 403 U.S. at 389-90). Second, in *Davis v. Passman*, the Supreme Court applied *Bivens* in the Fifth Amendment context to an employment discrimination claim. 442 U.S. 228 (1979). And third, in *Carlson v. Green*, the Supreme Court applied *Bivens* in the context of an Eighth Amendment violation by prison officials. 446 U.S. 14, 21 (1980). Despite many other opportunities to extend *Bivens*, the Supreme Court has consistently declined to do so and has observed that "if 'the Court's three *Bivens* cases [had] been . . . decided today,' it is doubtful that we would have reached the same result." *Hernandez v. Mesa*, 140 S. Ct. 735, 742-43 (2020) (quoting *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1856 (2017)); *see also Doe v. Hagenbeck*, 870 F.3d 36, 43 (2d Cir. 2017) ("In the forty-six years since *Bivens* was decided, the Supreme Court has extended the precedent's reach only twice, and it has otherwise consistently declined to broaden *Bivens* to permit new claims." (citing *Abbasi*, 137 S. Ct. at 1857)).

The court evaluating a *Bivens* claim conducts a two-step inquiry. First, the court must determine whether the claim "arises in a 'new context' or involves a 'new category of defendants.'" *Hernandez*, 140 S. Ct. at 743 (quoting *Malesko*, 534 U.S. at 68). The Supreme Court has found that the "understanding of a 'new context'" should be construed broadly so as to include any context that is "different in a meaningful way from previous *Bivens* cases decided by [the Supreme Court]." *Id*. (quoting *Abbasi*, 137 S. Ct. at 1859). Second, if the claim does arise in a new context, the court must determine "whether there are any special factors that counsel hesitation about granting the extension." *Id*. (citing *Abbasi*, 137 S. Ct. at 1857). One such special factor is "whether there is an alternative remedial scheme available to the plaintiff." *Arar*, 585 F.3d at 572; *see also Abbasi*, 137 S. Ct. at 1863 ("[W]hen alternative methods of relief are available, a *Bivens* remedy usually is not."). If there are "special factors that counsel hesitation about granting the extension," then the court should not create a new *Bivens* remedy. *Hernandez*, 140 S. Ct. at 743 (brackets

omitted). With these guiding principles in mind, and cognizant that "the Supreme Court has warned that the *Bivens* remedy is an extraordinary thing that should rarely if ever be applied in 'new contexts,'" *Arar*, 585 F.3d at 571 (citing *Malesko*, 534 U.S. at 69), the Court turns to Plaintiff's *Bivens* claims.

A. Personal Involvement

"Because the doctrine of *respondeat superior* does not apply in *Bivens* actions, a plaintiff must allege that the individual defendant was personally involved in the constitutional violation." *Thomas v. Ashcroft*, 470 F.3d 491, 496 (2d Cir. 2006); *see also Sash v. United States*, 674 F. Supp. 2d 531, 542 (S.D.N.Y. 2009) ("[A] Bivens action lies against a defendant only when the plaintiff can show the defendant's personal involvement in the constitutional violation."). Moreover, as recently emphasized by the Second Circuit, the fact that a defendant is a supervisor is not enough to impute personal involvement onto that actor; rather, "supervisory liability requires that the 'defendant, through the official's own individual actions, has violated the Constitution.'" *Williams v. Novoa*, No. 19-CV-11545, 2021 WL 431445, at *6 (S.D.N.Y. Feb. 5, 2021) (quoting *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020)); *see also Greene v. Sampson*, No. 18-CV-6103, 2021 WL 355477, at *4 (S.D.N.Y. Feb. 2, 2021).

Here, Plaintiff alleges that Mihalik and Sacco tossed her cell and destroyed her medication. (Am. Compl. at 5-6). Accordingly, Plaintiff has sufficiently pled that these two defendants were "personally involved." *Thomas*, 470 F.3d at 498. Further, Plaintiff alleges that Best and Whinnery may have turned a blind eye to reports regarding Mihalik's misconduct. (*See id*. at 8). Although the extent of Best's and Whinnery's involvement is unclear, given Plaintiff's *pro se* status, the Court concludes that Plaintiff has sufficiently alleged their personal involvement. *See id*. at 496-97 ("The personal involvement of a supervisory defendant may be shown by evidence that the

defendant[ ] . . . failed to remedy the violation after learning of it through a report or appeal . . . or [ ] failed to act on information indicating that unconstitutional acts were occurring."). Plaintiff, however, "entirely fails to allege the personal involvement of" Petrucci. (Defs. Br. at 11). Accordingly, as a threshold matter, Plaintiff's claims are dismissed as to Petrucci. *See Haywood v. Annucci*, No. 18-CV-10913, 2020 WL 5751530, at *5 (S.D.N.Y. Sept. 25, 2020) (finding no personal involvement where plaintiff "makes no mention of [defendant] in the body of his Complaint or Amended Complaint" and "offers no factual allegations suggesting that [defendant] was present for, knew of, or even had any reason to know about the alleged" violation).

      B. <u>Fifth Amendment Claim</u>

On the face of the Amended Complaint, Plaintiff asserts a claim for "[h]arassment [and] unprofessional conduct." (Am. Compl. at 2). But construing the pleading generously, as the Court must, it appears that Plaintiff has asserted a Fifth Amendment equal protection claim based upon allegedly discriminatory behavior directed at her sexuality. *See Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 472 (2d Cir. 2006) (construing *pro se* submissions "liberally" and "interpret[ing] [them] so as to raise the strongest arguments that they suggest" (brackets omitted)). Plaintiff alleges in support of this claim that prison officials repeatedly harassed her and used derogatory language regarding her sexuality. (*See* Am. Compl. at 5, 7).

"While the Supreme Court in *Davis* recognized a *Bivens* remedy for a Fifth Amendment equal protection claim in the employment context, the issue herein remains whether Plaintiff's claim arises in a new context. Indeed, not every Fifth Amendment equal protection claim falls within the confines of *Davis*. Rather, the Court must conduct a more precise inquiry to determine if the case is different in a meaningful way from previous *Bivens* cases. If it is, then the context is

new." *Negron v. United States*, No. 19-CV-05442, 2020 WL 5634304, at *8 (S.D.N.Y. Sept. 21, 2020) (internal citations and quotations omitted) (brackets omitted).

The Court concludes that Plaintiff's Fifth Amendment claim differs in a "meaningful way" from the plaintiff's claim in *Davis*, and therefore arises in a "new context." *Id*. In *Davis*, "a congressional staffer[ ] alleged that she was wrongfully terminated from her employment on the basis of her sex, and brought an equal protection claim pursuant to the due process clause of the Fifth Amendment against her employer, a Congressman." *Id*. at *7. For starters, Plaintiff does not allege discrimination "on the basis of her sex," *id.*, but rather, harassment directed at her sexual identity. Further, Plaintiff alleges a tenuous connection (at best) between her employment termination and Defendants' misconduct. And lastly, Plaintiff is a BOP inmate—not a Capitol Hill staffer. As such, her claim arises in a fundamentally different context than that in *Davis*. *See Oneil v. Rodriguez*, No. 18-CV-3287, 2020 WL 5820548, at *3 (E.D.N.Y. Sept. 30, 2020) ("[A]lthough *Davis* recognized a remedy for violation of a person's Fifth Amendment rights, the claim at issue was gender discrimination, not an equal protection claim based on treatment in prison."); *Brown v. Cooper*, No. CV 18-219 (DSD/BRT), 2018 WL 6977594, at *12 (D. Minn. Dec. 11, 2018) (distinguishing between "discrimination in an employment setting" and "a correctional setting" for the purpose of the "new context" analysis), *adopted by* 2019 WL 121943 (D. Minn. Jan. 7, 2019); *cf. Alexander v. Ortiz*, No. CV 15-6981 (JBS-AMD), 2018 WL 1399302, at *4 (D.N.J. Mar. 20, 2018), *aff'd*, 807 F. App'x 198 (3d Cir. 2020) ("*Davis*, while addressing a Fifth Amendment discrimination claim, concerns a congressional employee. Plaintiff's situation is vastly different from the plaintiff in *Davis* as he is a federal prisoner . . . .").

Because Plaintiff's claim "arises in a new context," *Hernandez*, 140 S. Ct. at 743 (internal quotation marks omitted), the Court must next consider "whether there are any special factors that

counsel hesitation about granting the extension." *Id*. (brackets omitted). Notably, the Supreme Court instructs that "if there is an alternative remedial structure present in a certain case, that alone may limit the power of the Judiciary to infer a new *Bivens* cause of action. For if Congress has created 'any alternative, existing process for protecting the [injured party's] interest' that itself may 'amoun[t] to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages.'" *Abbasi*, 137 S. Ct. at 1858 (quoting *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007)).

Here, Plaintiff had at least one alternative avenue for potential relief. Indeed, to the extent Plaintiff seeks redress for the improper imposition of disciplinary sanctions and the resulting loss of prison employment, she may seek habeas relief. *See Jiminian v. Nash*, 245 F.3d 144, 146 (2d Cir. 2001) ("A motion pursuant to [28 U.S.C.] § 2241 generally challenges the *execution* of a federal prisoner's sentences, including . . . prison disciplinary actions and prison conditions." (emphasis in original)). The existence of this alternative, and potentially "superior," non-*Bivens* remedy counsels against recognizing a new *Bivens* Fifth Amendment cause of action. *See Gonzalez v. Hasty*, 269 F. Supp. 3d 45, 63 (E.D.N.Y. 2017), *aff'd*, 755 F. App'x 67 (2d Cir. 2018) (observing that "habeas may be a superior remedy" to a *Bivens* claim for damages); *see also id*. (dismissing Fifth Amendment *Bivens* claim because plaintiff had alternative remedies available to him including, *inter alia*, "the filing of a writ of habeas corpus, pursuant to 28 U.S.C. § 2241").

Accordingly, Plaintiff's Fifth Amendment equal protection claim is dismissed.

C. Eighth Amendment Claim

Plaintiff also brings a deliberate indifference claim under the Eighth Amendment stemming from the alleged destruction of Plaintiff's anti-seizure medication. "In order to establish an Eighth Amendment claim arising out of inadequate medical care, a prisoner must prove 'deliberate

14

indifference to his serious medical needs.'" *Chance*, 143 F.3d at 702 (quoting *Gamble*, 429 U.S. at 104) (brackets omitted). "A plaintiff can prevail on a deliberate indifference to medical needs claim under the Eighth Amendment by satisfying a two-prong test." *Sutton v. Rodriguez*, No. 18-CV-01042, 2020 WL 5504312, at *4 (S.D.N.Y. Sept. 8, 2020).

> The first prong is objective and requires that the alleged deprivation in medical care be sufficiently serious. A deprivation in medical care is sufficiently serious if (1) the prisoner was actually deprived of adequate medical care and (2) the inadequacy in medical care is sufficiently serious. The latter inquiry contemplates a condition of urgency that may result in degeneration or extreme pain. . . . The second prong of the deliberate indifference test under the Eighth Amendment is subjective and requires that the plaintiff demonstrate that the defendant had a sufficiently culpable state of mind. A defendant had a sufficiently culpable state of mind if he acted or failed to act 'while actually aware of a substantial risk that serious inmate harm will result.

*Id.* at *4-5 (internal citations and quotation marks omitted). Defendants argue, and the Court agrees, that Plaintiff's allegations do not satisfy either prong.

First, Plaintiff does not allege a "sufficiently serious" deprivation of medical care. *Id.* at *4. A "sufficiently serious" deprivation results in "more than minor discomfort or injury." *Cain v. Jackson*, No. 05-CV-3914, 2007 WL 2193997, at *5 (S.D.N.Y. July 27, 2007). To be "sufficiently serious," the deprivation must create a "condition of urgency, one that may produce death, degeneration, or extreme pain." *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994). Though Plaintiff alleges that she suffers from "severe seizures," (Am. Compl. at 6), she does not allege that she was unable to replace her medication after it was destroyed, or that she missed any scheduled doses. (*See* Defs. Br. at 10-11). And, most notably, Plaintiff does not allege that she suffered from any seizures, or any other "condition of urgency," following the destruction of her medication. *Hathaway*, 37 F.3d at 66.

Second, Plaintiff does not allege that Mihalik and Sacco acted with "sufficiently culpable state[s] of mind" when they tossed Plaintiff's cell and destroyed her medication. *Sutton*, 2020 WL 5504312, at *5. Indeed, Plaintiff does not allege that Mihalik and Sacco: (1) were aware of Plaintiff's medical condition; (2) intentionally destroyed the medication; or (3) knew what the medication was for. (*See* Defs. Br. at 11). Therefore, Plaintiff fails to demonstrate that they were "actually aware of a substantial risk that serious inmate harm [would] result" from their actions. *Sutton*, 2020 WL 5504312, at *5. It follows, then, that Plaintiff's Eighth Amendment claim is dismissed.

## **CONCLUSION**

For the foregoing reasons, the Court GRANTS Defendants' motion to dismiss Plaintiff's Fifth Amendment claim with prejudice, as any amendment would be futile. *See Reed v. Friedman Mgt. Corp.*, 541 F. App'x 40, 41 (2d Cir. 2013) ("District courts should frequently provide leave to amend before dismissing a pro se complaint. However, leave to amend is not necessary when it would be futile." (citing *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000))).

The Court GRANTS Defendants' motion to dismiss Plaintiff's Eighth Amendment claim without prejudice. Plaintiff may file a Second Amended Complaint within 30 days from the date of this Order to address only the Eighth Amendment pleading deficiencies identified herein and for no other purpose. Failure to file a Second Amended Complaint within 30 days will result in dismissal of this action. Plaintiff is reminded that if she chooses to file a Second Amended Complaint, the Second Amended Complaint will completely replace, not supplement, the original complaint. Therefore, any facts or claims that Plaintiff wishes to maintain that were not herein dismissed with prejudice must be included in the Second Amended Complaint.

The Clerk is instructed to terminate the motion sequence pending at Doc. 33 and to mail a copy of this Memorandum Opinion and Order to Plaintiff.

**SO ORDERED:**

Dated: White Plains, New York
May 3, 2021

_____
Philip M. Halpern
United States District Judge